IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00285-KLM

PEDRO UCPECH,

     Plaintiff,

v.

CHEZ THUY CORPORATION, d/b/a Chez Thuy Restaurant, and
THUY LE, an individual,

     Defendants.
_____

## ORDER ON SUMMARY JUDGMENT
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on **Plaintiff's Motion for Summary Judgment** [#37] (the "Motion"), which seeks judgment as a matter of law on Plaintiff's claims under the Fair Labor Standards Act ("FLSA") and other issues. *See Second Am. Compl.* [#37] ("Complaint"). Specifically, Plaintiff seeks summary judgment as to the following: (1) Defendants are liable for their failure to pay Plaintiff overtime; (2) overtime damages can be computed; (3) the FLSA applies; (4) liquidated damages are appropriate; (5) Defendants failed to issue any payment to Plaintiff for his final few weeks of work; (6) unpaid final pay wages can be computed; (7) wage demand penalties are appropriate pursuant to Colo. Rev. Stat. § 8-4-109(3); (8) attorney fees may be decided separately; and (9) Defendant Thuy Le is an additional "employer" under the FLSA. *Motion* [#37] at 1. Plaintiff does not seek summary judgment on his claim under the Colorado Wage Claim Act or the Colorado

Minimum Wage Act, to the extent he is still asserting a violation of the latter Act.[1]  The Court has reviewed the Motion [#37], the Response [#38], the Reply [#39], the case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Motion [#37] is **granted in part and denied in part**.

## I.  Material Facts

The Court notes at the outset that it is has considered all the facts asserted in the briefing, even though it has not recited them all in this Order.  To the extent the Court distinguishes below between undisputed and disputed facts, this does not necessarily mean that there are genuine issues of material fact regarding the disputed facts.  The Court addresses this issue in its analysis of whether summary judgment is appropriate in Section III, *infra*.

### A.    Undisputed Facts

Defendant Chez Thuy is a restaurant located in Boulder, Colorado.  Plaintiff worked for Chez Thuy in the "back of the house" as a kitchen helper.  Plaintiff first started working for Chez Thuy during the month of August 2019.

During relevant times Defendants maintained a calendar indicating days that workers were off.  In some of Defendants' records, including the calendar, the Plaintiff Pedro UcPech is referred to by the nickname "Peter."  On the calendar, Defendants made notations indicating when Plaintiff was absent from work.  Other than the calendar, Defendants did not maintain any other records of days and times that Plaintiff worked.

---

[1] Plaintiff responded to Defendants' assertion that Plaintiff was paid properly and in excess of minimum wage for all hours worked (Response [#38] at 9) by stating that he has not made minimum wage claims in this case.  *See Reply* [#39] at 5.

From September 2019 until the COVID-19 pandemic disrupted operations in March, 2020, Plaintiff's normal schedule was to work full days Mondays, Wednesdays, Thursdays, Fridays and Saturdays, and a shorter day on Sundays; generally he was off Tuesdays.  A "full day" was 11 hours; Sundays Plaintiff was expected to work 7 hours.  Thus, in total, Plaintiff's normal work schedule was 62 hours per week.

Defendants issued checks in the following gross amounts to Plaintiff:

| Bates | Check Date | Pay Period | Ck No | Gross |
|---|---|---|---|---|
| D26 | 10/31/2019 | 10/1/19-10/31/19 | 32008 | $2,250.00 |
| D27 | 11/30/2019 | | 3680 | $750.00 |
| D28 | 12/31/2019 | | 3649 | $1,500.00 |
| D39 | 1/1/2019 | Dec. 2019 | 3429 | $1,500.00 |
| D29 | 1/31/2020 | 1/1/20-1/31/20 | 31916 | $1,500.00 |
| D30 | 2/29/2020 | 2/1/20-2/29/20 | 31939 | $1,500.00 |
| D31 | 4/15/2020 | 03/01/20-03/31/20 | 1362 | $1,500.00 |
| D32 | 4/30/2020 | 04/01/20-04/30/20 | 31967 | $1,500.00 |
| D33 | 5/19/2020 | 05/05/20-05/18/20 | 31977 | $1,000.00 |
| D34 | 6/1/2020 | 05/19/20-06/01/20 | 31995 | $1,000.00 |

None of these paychecks indicate quantity of hours worked.[2]

The following tax documents were issued by Defendants to Plaintiff:

a.     2019:  a 1099 for $11,700 and a W2 for $2,250

b.     2020: a 1099 for $11,950, a 1099 for $16,000, and a W2 for $8,000.

Thuy Le is the sole owner of Chez Thuy.  Thuy Le has been running the Chez Thuy restaurant for over 20 years, since approximately 1991.  At all relevant times Thuy Le exercised substantial control over the functions of the company's employees, including

---

[2] Although not a material fact, Defendants note that the check date for the December 2019 check in the amount of $1,500 is December 19, 2019 (not January 1, 2019). *Response* [#38] at 4 (citing Ex. 6, Bates No. CHEZ THUY 039).  Also although not a material fact as admitted by Defendants, the checks report a quantity of hours, but Defendants assert without reference to any evidence that the quantity reported for Plaintiff is not correct.  *Id.*

Plaintiff.  She actively participated in day-to-day operations, had the authority to hire and fire, and served as the "boss."  In conjunction with the acting manager Amy Khong, Defendant Thuy Le also handled requests for days off and other employee scheduling matters.

Defendant Chez Thuy (the "Restaurant") had annual gross revenues in excess of $500,000 during relevant times.  Defendants purchased items for use in the Restaurant that originated outside the state, including but not limited to rice, coconut, and lobster.

Defendants admit that Plaintiff was an "employee" within the meaning of 29 U.S.C. § 203(e) and 7 CCR § 103-1(2).  In deciding how to pay Plaintiff, Defendants did not speak to the Department of Labor or review its regulations.  Defendants also did not seek outside advice in regard to how to pay employees such as Plaintiff.

Plaintiff, through counsel, sent Defendants a letter dated July 20, 2020 claiming owed back wages and referring to Colo. Rev. Stat. § 8-4-109.  Defendants did not tender any money to Plaintiff in response.

**B.    Disputed Facts**

Plaintiff asserts that he first worked for three days from August 19-21 (or 20-22), 2019.  *Motion* [#37] at 2 (citing Pl.'s Ex. 4, Defs.' First Supp. Resp. to Int. No. 12). Defendants dispute this.  *Response* [#37] at 3 (noting that First Supp. Resp. to Int. 12 states "Plaintiff worked on a temporary basis for 2 or 3 days [in August 2019][,]" not that Plaintiff definitively worked three days in August 2019).

According to Plaintiff, Defendants contend that they paid him $150 per day for each of the first three days referenced above, but have no documentary records of those payments. *Motion* [#37] at 3 (citing Ex. 3, Def.'s 30(b)(6) Dep. at 82:5-10; Ex. 4, Defs.' First

Supp. Resp. to Int. No. 12; Ex. 5, calendar; Ex. 6, paystubs; Ex. 7, bank records). Defendants dispute this, asserting that Plaintiff admitted under oath during his deposition that he was told he would be paid $150/day for each day of work he performed, and that he would not be paid if he did not work. *Response* [#38] at 3 (citing Ex. A, Pl.'s Dep. at 52:21-25; 54:15-25; 55:1-7).

Plaintiff avers that he began working for the Restaurant full time on or about August 29, 2019. *Id.* (citing Ex. 4, Defs.' First Supp. Resp. to Int. No. 12). Defendants dispute this, correctly noting that the Response to Interrogatory No. 12 does not state this; rather it states that "[o]n August 29, 2019, Plaintiff returned to the [R]estaurant again asking for work." *Response* [#38] at 3 (citing Ex. 4).

Plaintiff maintains that at all relevant times Defendants did not maintain timekeeping records *per se* in the sense of clock in/clock out punch clocks, POS records, or similar. *Motion* [#37] at 3 (citing Answer [#25] ¶ 24; Ex. 3, Defs.' 30(b)(6) Dep. at 71:3-10. Defendants admit the Restaurant did not have a punch clock, but deny that they did not maintain timekeeping records as they maintained calendars to record the days Plaintiff worked. *Response* [#38] at 3 (citing Ex. 5, calendar).

According to the Motion [#37], the Restaurant closed for one day for COVID-19 (March 16, 2020) and then reopened with shortened hours (3:00pm to 8:00pm) for the remainder of Plaintiff's employment. Staff would arrive approximately a half hour to an hour before opening time. During this time period Plaintiff asserts that Defendants characterized his work time as being six hours a day per shift. *Motion* [#37] at 4 (citing Ex. 3, Defs.' 30(b)(6) Dep. at 50:15-52:23; 62:3-19; 116:23-24). Defendants admit the one day the Restaurant closed and the shortened hours based on COVID-19, but dispute the hours

Plaintiff worked per shift after March 17, 2020.  As to that issue, Defendants assert that Plaintiff admitted during his deposition that he arrived at work each day at the start of his shift or ten minutes before, and the only day he arrived up to thirty minutes before his shift was on Sunday.  *Response*  [#38] at 3-4 (citing Ex. A, Pl.'s Dep. at 78:13-25; 79:1-25; 80: 1-6).  Thus, according to Defendants, Plaintiff's hours after March 17, 2020, at most, were five (5) hours each day on Monday, Wednesday, Thursday, Friday, and Saturday, and 5.5 hours on Sunday, which totals 30.5 hours a week if he appeared for work each day, with no applicable overtime.

Plaintiff avers that Defendants paid Plaintiff in cash in the following amounts, indicated by the following handwritten notes written on the referenced documents:

| Bates | Month | Amount |
|-------|-------|--------|
| D35 | Oct. 2019 | $2,250 |
| D36 | Nov. 2019 | $3,750 |
| D38 | Dec. 2019 | $1,500 |
| D40 | Jan. 2020 | $3,000 |
| D41 | Feb. 2020 | $3,000 |
| D42 | Mar. 2020 | $4,500 |
| D31 | Apr. 2020 | $4,500 |
| D33 | May 2020 | $1,500 |

*Motion* [#37] at 5 (citing Ex. 7, bank records; Ex. 3, Defs.' 30(b)(6) Dep. at 99:10-22).

Defendants dispute this, asserting that they paid Plaintiff the following cash amounts:

| Month | Amount |
|-------|--------|
| October 2019 | $2,250 |
| November 2019 | $3,570 |
| December 2019 | $1,500 |
| **Total 2019:** | **$7,500** |
| January 2020 | $3,000 |
| February 2020 | $3,000 |
| March 2020 | $4,500 |

| | |
|---|---|
| April 2020 | $1,500 |
| May 2020 | $1,500 |
| June 2020 | $2,500 |
| **Total 2020:** | **$16,000** |

*Response* [#38] at 4-5 (citing Ex. 7; Ex. B; Ex. A, Pl.'s Dep. at 75-76) (testifying that he received the two cash payments of $1,500 and $1,000 as referenced in the June 2020 text messages). As far as the Court can ascertain from the foregoing, the only dispute pertains to what amount Plaintiff was paid in cash in April 2020 ($4,500 per Plaintiff or $1,500 per Defendants), and what amount was paid to Plaintiff in June 2020. Otherwise, the parties agree on the amounts of cash Plaintiff was paid.

A spreadsheet is attached to the Motion [#37] as Exhibit 9 that, according to Plaintiff, summarizes Defendants' payment records (citing Exhibit 6, paychecks; Exhibit 7, notations of cash payments on bank records, and Exhibit 8, tax records). *Id.* at 5. Defendants dispute that the spreadsheet summarizes their payment records, citing its responses to the paragraphs above indicating the amounts paid to Plaintiff in cash and checks. *Response* [#38] at 5. The Court notes, however, that the amount paid to Plaintiff in checks is undisputed, and the amount paid to Plaintiff in cash is disputed only as to April and June, as discussed previously.

According to Plaintiff, his rate of pay was a flat rate of $4500 per month. Plaintiff asserts that Defendants alternately contend that his rate of pay was $12.50 per hour, or $150 per day. *Motion* [#37] at 5 (citing Exs 1-2, Complaint & Answer; Ex. 3, 30(b)(6) Dep. at 40:1-23). Defendants dispute this, asserting that Plaintiff admitted under oath during his deposition that he was told he would be paid $150/day for each day of work he performed, and that he would not be paid if he did not work. *Response* [#38] at 5 (citing Ex. A, Pl.'s

Dep. at 52:21-25; 54:15-25; 55:1-5).   Defendants further assert that as their corporate representative testified, the day rate of $150 for Plaintiff was calculated based on a regular rate of $12.50/hour and an overtime rate of $18.75.   *Id*. (citing Ex. 3, 30(b)(6) Dep. at 40:21-23, pp.104-15, explaining that Plaintiff's requests for cash advances made it appear as though he was paid $4,500/month, when, in reality, Defendants paid him based on an hourly rate of $12.50 hour).

At the time of his hire, Plaintiff asserts that Defendants did not expressly state a specific pay rate.   *Motion* [#37] at 6 (citing Ex. 3, Defs.' 30(b)(6) Dep. at 120:7-15 ("Q: Okay.… how was Mr. UcPech's rate of pay, the $12.50 an hour that you talked about or the $150 a day, how was that communicated to him? Was there any writing given to him, or was it verbal? How was it communicated?  A: We did say that we pay him over minimum wage. That's all we tell him. Q  That's all you told him? A:Yes).   Defendants dispute this, asserting again that Plaintiff admitted under oath during his deposition that he was told he would be paid $150/day for each day of work he performed, and that he would not be paid if he did not work.  *Response* [#38] at 5-6 (citing Ex. A, Pl.'s Dep. at 54:15-25; 55:1-5, 22).

In regard to days and hours worked and when pay was received, Plaintiff attaches to the Motion [#37] as Exhibit 10 a spreadsheet which he states is based on a summary of Defendants' relevant testimony and calendar records, with the amount allegedly paid per the paystubs and bank records.   Defendants' stated hourly rate of $12.50 per hour is included to show how much Plaintiff contends he should have been paid if that had been the rate actually in effect for his work.  *Motion* [#37] at 6 (citing Ex. 10, referencing Ex. 3, Def.' 30(b)(6) Dep.; Ex. 6, paystubs; Ex. 7, notations of cash payments on bank records). Defendants dispute the spreadsheet and Plaintiff's assertions in this paragraph.  They state

that in addition to the days summarized as not being worked on Exhibit 10, Plaintiff also did not work on September 11, 2019 or January 16, 2020 through January 24, 2020. *Response* [#38] at 6.  Then, after COVID-19 closed the restaurant on March 16, 2020, the Restaurant's hours changed to 3:00 p.m. to 8:00 p.m. for takeout service only, and Plaintiff only worked five (5) hours each of these days, with up to 5.5 hours on Sundays (to the extent he continued to report to work 30 minutes early on Sundays after COVID-19).

The Motion [#37] asserts that Defendants' calendar shows Plaintiff's last day as being June 26, 2020.  The last record of any payment issued to him was June 1, 2020. *Motion* [#37] at 6 (citing Ex. 5, calendar at CHEZ THUY 25; Ex. 9, spreadsheet of payments issued; Ex. 6 paystubs at CHEZ THUY 34, with final check dated 6/1/2020).  Defendants dispute this, stating that Plaintiff admitted under oath during his deposition that he received $2,500 in cash payments from Defendants in June 2020.   *Response* [#38] at 6 (citing Ex. B, Text Messages, Ex. A, Pl.'s Dep. at pp.75-76 – testifying that he received two cash payments of $1,500 and $1,000 as referenced in the June 2020 text messages).

Plaintiff states that Defendants advertise the Restaurant to the entire world on the internet at "www.chezthuy.com" and accept credit cards as one form of payment. Defendants bank at US Bank.  *Motion* [#37] at 7 (citing Answer [#25] ¶ 9; Ex. 3, 30(b)(6) Dep. at 126:14-16; Ex. 7, bank records).  These assertions are disputed by Defendants. Specifically, while Defendants admit the Restaurant has a website address and accepts credit card payments, Defendants assert that they do not engage in advertising and do not agree with the characterization that they "advertise[] its restaurant to the entire world." *Response* [#38] at 6.

## II.  Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Pursuant to Rule 56(a), summary judgment should be entered if the pleadings, the discovery, affidavits, and disclosures on file show "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it might affect the outcome of the case.  *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).  When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Id.* at 671.  If the movant carries the burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in her favor.  *See Anderson*, 477 U.S. at 248.  The nonmovant must go beyond the allegations of her pleadings and provide admissible evidence, which the Court views in the light most favorable to her.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

### III.  Analysis

**A.     Whether Plaintiff Can Establish Coverage Under the FLSA**

Plaintiff asserts that the FLSA applies in this case, and requests summary judgment to that effect.  *Motion* [#37] at 14.  Defendants dispute that the FLSA applies to them, and accordingly asserts that the Court should decline to exercise supplemental jurisdiction over Plaintiff's Colorado Wage Act claim.  *See Response* [#38] at 7-9 and n. 2.  FLSA coverage is a threshold issue that must be addressed for Plaintiff's FLSA claim to go forward.

An employer is subject to the overtime and minimum wage provisions of the FLSA if the Plaintiff employee is engaged in commerce (individual coverage) or the employer is an enterprise engaged in commerce (enterprise coverage).  Individual coverage is limited to employees "who in any workweek [are] engaged in commerce or in the production of goods for commerce." 29 U.S.C. 207(a)(1).  For individual coverage to apply under the FLSA, Plaintiff must provide evidence that he was engaged in commerce or engaged in the production of goods for commerce.  *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1265-66 (11th Cir. 2006) (citing 29 U.S.C. 207(a)(1)).  Plaintiff has not asserted individual coverage under the FLSA in his Motion [#37], only enterprise coverage.  *Id.* at 14-15; *see also Reply* [#39] at 1-4.  Nor has Plaintiff presented evidence that he, as a kitchen helper at the restaurant, was directly engaged in the production of goods for commerce.  *See Response* [#38] at 8; *Monelus v. Tocodrian, Inc.*, 598 F. Supp. 2d 1312, 1314-15 (S.D. Fla. 2008) (collecting cases and finding that a cook who worked at a local restaurant failed to establish individual coverage under the FLSA even though he may have handled food that traveled in interstate commerce).

Accordingly, the Court turns to Plaintiff's argument that Defendants engaged in commerce (enterprise coverage).[3]   To establish enterprise coverage, Plaintiff must demonstrate that the enterprise: (1) has at least two employees that are directly engaged in commerce, in the production of goods for commerce, or handle, sell or otherwise work on goods or materials that have been moved in or produced for commerce; and (2) that the enterprise's annual gross volume of sales made is greater than or equal to $500,000.  29 U.S.C. 203(s)(1)(A)(I)-(ii); *see also Harlas v. Barn LLC*, No. 18-CV-02320-RM-NYW, 2020 WL 730313, at *3 (D. Colo. Feb. 13, 2020).   Defendants concede that their gross annual sales exceed $500,000; thus, only the first prong of the above test is at issue.

Defendants argue that Plaintiff has not come forward with sufficient evidence that at least two employees of the Restaurant regularly handle materials that have traveled in interstate commerce. *Response* [#38] at 9.  In contrast, Defendants note that they provided deposition testimony that their Restaurant only purchases materials from local suppliers. *Id*. (citing Ex. 3, 30(b)(6) Dep. at 125:9-25.)

The Court first rejects Defendants' argument that enterprise coverage under the FLSA does not apply because they shop and purchase supplies only from local vendors. As Plaintiff points out, even if it were true, *arguendo*, that Defendants never ordered supplies online and that all of their purchases were made from stores or vendors within Colorado, that is not enough to demonstrate a lack of interstate commerce as the products at issue still originated from out of state. *Id*. at 15.  Thus, the Court finds that the evidence shows that the Restaurant handles, sells, or otherwise works on goods or materials that

---

[3] The Court addresses in Section III.C.2, *infra*, whether Defendant Thuy Le is an employer, but assumes for the analysis in this section that she is.

have been moved in or produced for commerce for purposes of enterprise coverage. As stated in 29 C.F.R. § 779.242:

> [G]oods will be considered to "have been moved * * * in commerce" when they have moved across State lines before they are handled, sold, or otherwise worked on by the employees. It is immaterial in such a case that the goods may have "come to rest" within the meaning of the term "in commerce" . . . , before they are handled, sold, or otherwise worked on by the employees in the enterprise. Such movement in commerce may take place before they have reached the enterprise. . . . Thus, employees will be considered to be "handling, selling, or otherwise working on goods that have been moved in * * * commerce" where they are engaged in the described activities on "goods" that have moved across State lines at any time in the course of business, such as from the manufacturer to the distributor, or to the "enterprise," or from one establishment to another within the "enterprise."[4]

Here, it is undisputed that Defendants purchase lobster which they believe is probably from Maine as well as rice and coconut products that originated out of state. There are no genuine issues of material fact as to this issue. These food items would necessarily have moved across State lines before they were handled or sold by employees of the Restaurant. Courts have found that food items that originated out of state before being obtained by the enterprise are sufficient to constitute materials that have been moved in or produced for commerce as required for enterprise coverage. *See Torres v. Rock & River Food Inc.*, 244 F. Supp. 3d 1320, 1328-30 (S.D. Fla. 2016) (finding that "the foodstuffs ordered from [a source] whose invoices show that the ingredients traveled

---

[4] Under the FLSA, "goods" are "'goods. . . wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but [do] not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof." *Torres v. Rock & River Food Inc.*, 244 F. Supp. 3d 1320, 1328-30 (S.D. Fla. 2016) (quoting 29 U.S.C. § 203(l)).  While the statute does not define "materials," this has been defined as "'tools or other articles necessary for doing or making something.'" *Id.* (citing *Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1223-26 (11th Cir. 2010)).  An example of this is soap used by a laundry because soap could be deemed necessary for washing clothes that is done commercially in the employer's business. *Id.*

across state lines "were materials necessary for the making of something, namely sushi, and there can be no argument that the making of sushi had a significant connection to the employer's commercial activity of serving food[,]" and granting summary judgment to the plaintiff on FLSA coverage because a reasonable jury could conclude that the ingredients used by the defendants crossed state lines and were regularly and recurrently handled by two employees); *Diaz v. Jaguar Rest. Grp., LLC*, 649 F. Supp. 2d 1343, 1353-54 (S.D. Fla. 2009) (finding that materials used by the defendant's employees during the course of the restaurant's operations were sufficient to trigger enterprise coverage "because, even if the business purchased those materials locally from Florida restaurant or food product distributors," they had "in the past" traveled in interstate commerce); *see also Rocha v. Bakhter Afghan Halal Kababs, Inc*, 44 F. Supp. 3d 337, 346 (E.D.N.Y. 2014) (finding that the first prong for enterprise coverage was met for purposes of motion to dismiss where the complaint alleged that the plaintiff "regularly handles goods in interstate commerce, such as dishwashing liquid, olive oil and meat, and other supplies produced outside of the State of New York"). Defendants have not cited any authority to the contrary, or to support their argument that this prong of enterprise coverage is not met.

The next question is whether Plaintiff has shown that two or more employees of the Restaurant handle, sell, or otherwise work on goods or materials as required in the first prong of enterprise coverage. In addition to his own work, Plaintiff cites evidence regarding other employees who handled the goods/materials that originated outside of the state. *Reply* [#39] at 4. Defendants' 30(b)(6) representative Amy Khong testified that she worked at the Restaurant as a waiter and that other employees who worked with Plaintiff included Tu Ngo (the head chef), Hoa Spitaly (chef), Heng Nguyen (chef), Lin Dong (chef), Hi Lee

-14-

(cook helper), Duong Le (cook helper), Nhi Giang (server), Mike Reed (server), Ching Nguyen (server), Hi Lou (busser), and Heng To (busser).  Ex. 3, 30(b)(6) Dep. at pp 44-49. The 30(b)(6) representative also testified that four chefs worked together daily when the restaurant was open, and that three chefs worked daily during COVID-19.  *Id*. at pp. 59-60. The cook helpers plated some of the food, chopped and cooked vegetables, and cut meat. *Id*. at p. 60.[5]   Plaintiff argues that the Restaurant's employees would have had to have used the food items that originated outside of the state.  The Court agrees, at least as to the chefs and the cook helpers, finding that a reasonable jury could conclude from the evidence that two or more employees at Defendants' restaurant handled, sold, or otherwise worked with the food items that originated out of state and have been moved in or produced for commerce.

Based on the foregoing, the Court finds that the first prong of enterprise coverage is met.  Further, as the second prong is not disputed, the Court finds that there is FLSA coverage since Defendants' restaurant is an enterprise engaged in commerce. Accordingly, the Motion [#37] is **granted** as to this issue.

**B.   Whether Plaintiff Has Shown that Defendants Failed to Pay Him Overtime**

Plaintiff next argues that the evidence shows as a matter of law that he was not paid overtime for the months of October 2019 through February 2020.  *Motion* [#37] at 9. Plaintiff specifically states that he is not seeking overtime for his work from mid-March

---

[5]   While Plaintiff did not specifically reference this testimony in his briefing, he attached this portion of the deposition to his Motion [#37].  Pursuant to Fed. R. Civ. P. 56(c)(3), the Court may consider materials in the record even if they are not specifically cited by a party.  Defendants did not cite any authority to the contrary, or present any evidence that only one employee would have handled such food items.  Accordingly, Defendants failed to show that there is a genuine issue of material fact as to this issue.

through June 2020 since he was working reduced hours due to the pandemic. *Id*. at 9-10. "The FLSA generally requires covered employers to pay its employees overtime pay for work in excess of 40 hours a week." *Chavez v. City of Albuquerque*, 630 F.3d 1300, 1304 (10th Cir. 2011). "Overtime hours must be compensated 'at a rate not less than one and one-half times the regular rate at which [the employee] is employed.'" *Id*. (quoting 29 U.S.C. § 207(a)(1)). An employee's "regular rate" of pay is thus the basis on which overtime compensation is computed under the FLSA, and "[t]he proper determination of that rate is therefore of prime importance." 29 U.S.C. § 207(a)(1); *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945)). "The regular rate 'shall be deemed to include all remuneration for employment paid to, or on behalf of the employee,'" with certain exceptions not applicable here. *Chavez*, 630 F.3d at 1304 (quoting 29 U.S.C. § 207(e)). The "regular rate is 'the hourly rate actually paid for the normal, non-overtime workweek.'" *Id*. at 1304-05 (quoting *Walling*, 323 U.S. at 40). This calculation must be separately performed for each distinct workweek. *See Walling*, 323 U.S. at 40; 29 C.F.R. §§ 778.109 and 778.113(b).

Plaintiff asserts that Defendants first paid him a daily rate of $150 a day and then, when he started full time, changed it to a salary of $4500 per month. *Motion* [#37] at 9. Plaintiff relies on the spreadsheet he submitted as Exhibit 9 which contains a summary of Defendants' records and testimony regarding pay records (including cash payments as written in handwriting on bank statements, paystubs, non-payroll checks, W2s, 1099s, and testimony regarding cash payments for the initial three days of work for which there are no records). *Id*. Once these components are put together, Plaintiff avers that the evidence shows that he was in fact paid a $4500 per month rate from October 2019 through

February 2020, and also shows that he was not and could not have been paid on an hourly basis (at $12.50 per hour or otherwise) or a day rate basis as claimed by Defendants. *Id.* Specifically, adding the payments by cash and check, "the payment records show a total of exactly $4500 for the months of October 2019 through February 2020." *Id.*[6]

Defendants disagree, asserting as to Plaintiff's pay that he admitted in his deposition that he was informed of a daily rate of $150, not a monthly salary of $4500, and that he would not receive pay for days he did not work. *Response* [#38] at 10 (citing Ex. A, Pl.'s Dep. at 52:21-25; 54:15-25; 55:1-5). Additionally, Defendants assert that the hourly rate sheets that are maintained and posted in the Restaurant show that kitchen helpers and dishwashers were paid $12.50/hour in 2019. *Id.* (citing Exs. C and D). Thus, Defendants assert that they have provided uncontroverted testimony that the hourly rate for a kitchen helper was $12.50 per hour, and that Plaintiff and Defendant Thuy Le agreed on a daily rate of $150. *Id.* at 11. Plaintiff was, according to Defendants, paid amounts by check and cash consistent with this agreed rate. *Id.* Accordingly, Defendants aver that they paid Plaintiff at least minimum wage and overtime for all hours worked, and Plaintiff's claims for unpaid overtime must fail. *Id.* (citing Ex. 3, Defs.' 30(b)(6) Dep. at 2:2-24; 70:2-20; 132:19-25; 133:1-25; 134:1-12). Finally, Defendants argue that there are disputed issues of material fact regarding the days and hours worked by Plaintiff, such that summary judgment may not be entered in favor of Plaintiff on his claims for unpaid overtime. *Id.*

---

[6] The paystubs show no indication at all of hours worked (or even of days worked); there is simply a line item for "rate" with a certain even dollar amount, usually $1500 or $1000. Plaintiff further notes that even when Defendants' attendance records show Plaintiff as having been a "no show" for the day, there is no variation in the amount paid. *Motion* [#37] at 10 and Ex. 10 (day-by-day spreadsheet).

The Court agrees with Plaintiff that the undisputed evidence shows that he was paid on a monthly rate basis of $4500 from October 2019 to February 2020 through a combination of payments by payroll, check, and cash.  While Defendants dispute the figures in the spreadsheet Plaintiff relies on (Exhibit 9) and assert that Plaintiff's argument that he was paid $4500 a month is not supported by citation to evidence in the record (*Response* [#38] at 5, 10), the Court disagrees.  Plaintiff has attached the paystubs, checks, and other evidence that support the spreadsheet and his assertion that he was paid $4500 a month from October 2019 to February 2020.  As explained in Section I, *supra*, the amounts that Plaintiff was paid by payroll, check, and cash for the months of October 2019 through February 2020 were not actually disputed by Defendants.  Furthermore, to the extent that Defendants argue that Plaintiff was paid amounts by check and cash consistent with the $12.50 per hour rate, *Response* [#37] at 11, they have cited no evidence in support of this contention and the evidence cited by Plaintiff is to the contrary.  Accordingly, Defendants have failed to raise a genuine issue of material fact as to this issue.

Defendants also rely on deposition testimony from their 30(b)(6) representative that the $4500 amount paid to Plaintiff does not accurately reflect the monthly rate of pay because it reflects advances that Plaintiff received.  *See* Ex. 3, Defs.' 30(b)(6) Dep. at 40:21-23, pp.104-15.  However, Defendants present no evidence in the form of records from the Restaurant to support that assertion.  Moreover, the calculation of the regular rate of pay is a math calculation based on what the evidence shows the employee was actually paid, and testimony from the employer contesting that amount is not pertinent to the issue and does not create a genuine issue of material fact.  *See* 29 C.F.R. § 778.108 (stating that

"[t]he 'regular rate' of pay under the [FLSA] cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee; it must be drawn from what happens under the employment contract . . . .The Supreme Court has described it as the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed—an 'actual fact'") (quoting *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446 (1948)); *see also Chavez*, 630 F.3d at 1304 ("the regular rate is 'the hourly rate actually paid for the normal, non-overtime work week") (quotation omitted).

The Court also finds that Defendants' assertion as to how Plaintiff was paid does not add up mathematically, and thus must be rejected.  As to the $12.50 hourly rate, assuming Plaintiff worked exactly the 62 hours that Defendants admit were his normal weekly work hours, Plaintiff would have earned $912.50 per week (including 40 hours at the regular rate and 22 hours at the time and a half rate).  *See Motion* [#37] at 10.  There is no relationship between that number and the amount Plaintiff was actually paid as per Defendants' records.  There is also no relationship between a $150-per-day rate and the pay records.[7]

The next issue is whether Plaintiff's regular rate of pay and overtime are determinable.  First, the Court notes that the FLSA does not require employers to compensate employees on an hourly rate basis; compensation may be calculated instead on a monthly basis as here.  29 C.F.R. § 778.109.  In such case the overtime compensation due to employees must be computed on the basis of the hourly rate derived

---

[7]  Plaintiff also correctly notes that none of the time or pay records in the record show anything about a $12.50 per hour rate.  For example, there is no notation of this hourly rate on paystubs.  *Reply* [#38] at 7.  The only proffer in this regard are some written fliers indicating that rate, but there is no evidence that Plaintiff ever saw those documents or had any awareness of them, if indeed they actually existed at the time of his employment.  *Id.*  Similarly, there are no time or pay records in the record reflecting a $150 per day rate.  *Id.*

therefrom. *Id.* Accordingly, it is necessary to compute the regular hourly rate for Plaintiff. This must be determined by dividing Plaintiff's total remuneration for employment in any workweek by the total number of hours actually worked by him in that workweek for which he was paid. *Id.*; *see also* 29 C.F.R. § 778.113(b) (stating that where the salary covers a period longer than a workweek, it must be reduced to its workweek equivalent, and that a monthly salary can be translated "to its equivalent weekly wage by multiplying by 12 (the number of months) and dividing by 52 (the number of weeks). . . . Once the weekly wage is arrived at, the regular hourly rate of pay will be calculated . . . [by dividing it by the number of hours which the salary is intended to compensate]").

Based on the foregoing, the Court agrees with Plaintiff that his regular rate of pay and overtime rate are determinable. $4500 per month times 12 months divided by 52 weeks yields a weekly rate of $1038.46. *Motion* [#37] at 11. Moreover, construing the evidence in the light most favorable to Defendants for purposes of Plaintiff's Motion [#37], the undisputed evidence as discussed in Section I, *supra*, shows that Plaintiff's regular schedule was 62 hours a week (rather than the default of 40 hours a week). Defendants do not dispute that the resulting regular rate of pay is $16.75 and the corresponding overtime rate is $25.12. Defendants also do not dispute that even when a nonexempt employee such as Plaintiff is paid on a monthly basis, he is entitled to overtime for hours worked over 40 hours a week. *See*, *e.g.,* 29 C.F.R. § 778.103 ("If in any workweek an employee is covered by the Act and is not exempt from its overtime pay requirements, the employer must total all the hours worked by the employee for him in that workweek . . . and pay overtime compensation for each hour worked in excess of the maximum hours applicable under section 7(a) of the Act[,]" i.e. 40 hours per 29 U.S.C. § 207(a)(2)(C)).

The final issue is what amount, if any, of overtime is due Plaintiff.  Plaintiff broadly states that he is owed overtime for 554 hours, citing to the spreadsheet attached as Exhibit 10.  *See Motion* [#37] at 8-9, 11.  However, that spreadsheet is not limited to the period from October 2019 to February 2020 for which the Court has determined Plaintiff's regular rate of pay and overtime rate, and workweeks from that period overlap with periods outside of that time frame.  *See Ex. 10*.  Moreover, for some weeks Plaintiff claims overtime of 11 hours and for other weeks he claims overtime of 22 hours.  Plaintiff does not explicitly state in the Motion [#37] how many hours that he is owed overtime during this five month period, and the Court declines to attempt its own calculation based on a spreadsheet that is disputed by Defendants.  The Court notes in addition that Plaintiff has not briefed what the regular rate of pay is for the other periods that he worked and for which Plaintiff seeks overtime (presumably August and September 2019 as well as the first half of March), and the Court finds that there are genuine issues of fact relating to the hours/days worked, at least as to August 2019 and March 2020.  Accordingly, to the extent Plaintiff requests that the Court find as a matter of law that he is entitled to overtime of 554 hours of total overtime amounting to $13,918.73, the Court declines to do so as this has not been properly established.  The Motion [#37] is thus **denied** as to the amount of overtime due, and what that amount is for the months at issue that Plaintiff worked for Defendants.

## C.    Additional Issues

### 1.    Whether Defendants Failed to Pay Plaintiff for His Final Weeks of Work

Plaintiff next argues that Defendants failed to pay Plaintiff for his final weeks of work in June 2020.  *Motion* [#37] at 12.  According to Plaintiff, the last record of a paycheck (or

payment of any kind) issued to him was dated June 1, 2020. *Id.* During the 21 workdays during this period, Plaintiff states he was working the shortened schedule of six hours a day (citing Exhibit 10), and that he was unpaid for 126 hours of work. *Id.* The Court finds that there are genuine issues of material fact as to this issue. Defendants dispute that Plaintiff received only one paycheck on June 1, 2020, citing his testimony that he received a cash payment of $1,500 on June 12, 2020. *Response* [#38] at 5 (citing Ex. A, Pl.'s Dep. at 75-76). Moreover, even if amounts were not paid to Plaintiff in June 2021, Plaintiff provides three different possibilities for what the regular rate of pay should have been for his work that month. *Motion* [#37] at 12-13. The Court cannot make this determination based on the evidence of record. Accordingly, the Motion [#37] is **denied** as to Plaintiff's argument that he was not paid for his final weeks of work in June 2021, and what amount, if any, he is owed for that month.

### 2.    Whether Thuy Le is an Additional Employer under the FLSA

Plaintiff also asserts that Defendant Thuy Le is an "employer" of Plaintiff (in addition to Defendant Chez Thuy Corporation). *Motion* [#37] at 13-14. As this Court has stated, personal liability under the FLSA has often been imposed on an individual who "falls within the FLSA's definition of an 'employer' and thus shares statutory obligations with the corporation itself." *Lopez v. Next Generation Constr. & Envtl., LLC*, No. 16-cv-00076-CMA, 2016 WL 6600243, *3-4 (D. Colo. Nov. 8, 2016). Numerous factors are considered in determining whether an individual is an "employer" under the FLSA, including "whether the alleged employer has the power to hire and fire employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method

of payment, and maintains employment records." *Id.* "Courts also have looked at the level of operational control the individual has over the company, including whether the individual is 'involved in the day-to-day operation or ha[s] some direct responsibility for the supervision of the employee.'" *Id.* (quotation omitted).

Here, Plaintiff cites evidence supporting his assertion that Thuy Le "was the 'boss' as well as the owner of the restaurant, had the power to hire and fire, had the authority to set or alter work schedules, and was actively involved in day to day operations of the restaurant. *Motion* [#37] at 14; *see also id.* at 6 ¶ 26 (citing *Answer* [#25] ¶¶ 12-14; Ex. 3, 30(b)(6) Dep. at 53:1-24, 56:1-9.5). These facts were not disputed by Defendants (*see Response* [#38] at 6 ¶ 26), and support Plaintiff's argument that Thuy Le was an additional employer. Additionally, Defendants did not address the merits of Plaintiff's argument that Thuy Le is an employer, or cite any evidence to create a genuine issue of material fact as to this issue. Accordingly, the Court finds from the foregoing that Thuy Le is an additional employer of Plaintiff as defined in the FLSA. Summary judgment is thus **granted** as to this issue.

### 3. Whether Liquidated Damages are Appropriate

Plaintiff also contends that liquidated damages are appropriate on the FLSA claim because Defendants cannot maintain a "good faith" defense. *Motion* [#37] at 15-17. The Tenth Circuit has made clear that an employer in violation of the FLSA is generally liable for both compensatory damages as well as "'an additional equal amount as liquidated damages,'" essentially doubling the plaintiff's damage award. *Mumby v. Pure Energy Services (USA) Inc.*, 636 F.3d 1266, 1272 (10th Cir. 2011) (quoting 29 U.S.C. § 216(b)).

However, if the employer can establish that its conduct was both in good faith and based on a reasonable belief that its conduct was not in violation of the FLSA, the court may, in its discretion, award less or no liquidated damages.  *Id.* (citing 29 U.S.C. § 260).

        "Good faith is a subjective test that requires 'the employer have an honest intention to ascertain and follow the dictates of the FLSA.'" *Fowler v. Incor*, 279 F. App'x 590, 599-600 (10th Cir. 2008) (quotation omitted).  The reasonableness requirement "'imposes an objective standard by which to judge the employer's behavior.'" *Id.* at 600 (quotation omitted).  Only in those instances where the court finds that the employer meets this burden, may the court, "in its sound discretion," deny liquidated damages.  *Id.*

        Here, Plaintiff asserts that "Defendants have not put forth evidence that as a matter of law could satisfy this burden of proof." *Motion* [#37] at 17.  Further it is undisputed that in deciding how to pay him, Defendants did not speak to the Department of Labor or review its regulations, nor did they seek any other outside advice on the matter.  *Id.* at 17, *see also* 6 id. at 7 ¶¶ 31-32; *Response* [#38] to ¶¶ 31-32 at 6-7).  Plaintiff concludes that regardless of what Defendants' internal subjective state of mind may have been, this stance is objectively unreasonable.  *Motion* [#37] at 17.

        Turning to the Court's analysis, the employer bears the burden on the issue of liquidated damages to prove that its conduct was reasonable and in good faith.  *See Renfro v. City of Emporia, Kan.*, 948 F.2d 1529, 1540 (10th Cir. 1991).  If this burden is met, the Court may eliminate or reduce the award of liquidated damages.  *Id.*  For purposes of assessing whether the employer has met its burden, "[t]he good faith requirement mandates the employer have 'an honest intention to ascertain and follow the dictates of the Act.'" *Id.* (quotation omitted).  "'The additional requirement that the employer have

reasonable grounds for believing that his conduct complies with the Act imposes an objective standard by which to judge the employer's behavior.'" *Id.*

In this case, Defendants did not respond to Plaintiff's argument that he is entitled to liquidated damages, present any evidence as to how their conduct was objectively reasonable to meet their burden on this issue or to refute Plaintiff's evidence, or dispute that liquidated damages are appropriate if Plaintiff prevails on the FLSA claim. Accordingly, the Court finds that liquidated damages are appropriate and such award is mandatory if Plaintiff prevails on his FLSA claim. The Motion [#37] is thus **granted** as to this issue.

### 4.   Whether Colorado Wage Demand Penalties are Appropriate

Finally, Plaintiff argues that Colorado wage demand penalties are appropriate in this case pursuant to Colo. Rev. Stat. § 8-4-109(3). That statute provides that "[i]f an employer refuses to pay wages or compensation in accordance with subsection (1) of this section, the employee, his or her designated agent, or the division may send a written demand for the payment." *Id.* § 8-4-109(3)(a). If the employer disputes the amount of wages or compensation claimed by the employee, it may make "a legal tender of the amount that the employer in good faith believes is due" within fourteen days after the written demand is sent in order to avoid a penalty. § 8-4-109(3)(a.5). If the employer does not make such a legal tender, it "shall be liable to the employee for the wages or compensation, and a penalty of the sum of the following amounts of wages or compensation due or, if greater, the employee's average daily earnings for each day, not to exceed ten days, until such payment or other settlement satisfactory to the employee is made:

> (I) One hundred twenty-five percent of that amount of such wages or compensation up to and including seven thousand five hundred dollars; and

(II) Fifty percent of that amount of such wages or compensation that exceed seven thousand five hundred dollars."

§ 8-4-109(3)(b).

Here, Plaintiff's attorneys sent a written demand letter dated July 9, 2020 for Plaintiff's wages pursuant to § 8-4-109(3). *Motion* [#37] at 17 (citing Ex 11). Plaintiff further asserts that the Complaint in this action was filed on January 28, 2021, and can serve as a "written demand." *Id.* (citing *Damitio v. Sushi Zanmai Inc.*, No. 12-CV-2603-JLK, 2013 WL 136186, at *1 (D. Colo. Jan. 10, 2013). Defendants have not, according to Plaintiff, paid any money in response to the letter or the Complaint, and considerably more than 14 days have passed. *Id.* Accordingly, pursuant to § 8-4-109(b), which language is mandatory, Plaintiff argues that Defendants are liable for damages equal to 125% of the first $7,500 owed to Plaintiff, plus 50% of the remainder. Again, Defendants did not respond to this argument in their Response [#38], present any evidence to create a genuine issue of material fact, or dispute that wage demand penalties under § 8-4-109(b) are appropriate if Plaintiff is owed compensation. Accordingly, if Plaintiff prevails on his claim under the Colorado Wage Act, the Court finds that penalties are appropriate as set forth in Colo. Rev. Stat. § 8-4-109(b), and the Motion [#37] is **granted** as to this issue.[8]

### III. CONCLUSION

Based upon the foregoing,

IT IS HEREBY **ORDERED** that Plaintiff's Motion for Summary Judgment [#37] is

---

[8]  While the Motion [#37] states that it seeks summary judgment on the issue of whether "attorney fees may be decided separately," *id.* at 1, Plaintiff did not brief this issue. The Court agrees, however, that attorney fees, if appropriate, would need to be decided after the remaining issues are resolved at trial.

**GRANTED IN PART AND DENIED IN PART**.  Specifically,

IT IS **ORDERED** that the Motion [#37] is **GRANTED IN PART** as follows:

1)      Defendants' restaurant is an enterprise engaged in commerce and governed by the FLSA;

2)      Defendant Thuy Le was an additional employer of Plaintiff under the FLSA;

3)      From October of 2019 through February of 2020, Plaintiff was paid on a monthly rate basis of $4500 per month;

4)      For the time period of October 2019 through February or 2020, Plaintiff's regular rate of pay was $16.75 per hour and his overtime rate of pay was $25.12 per hour;

5)      If Plaintiff prevails on his FLSA claim, liquidated damages are appropriate; and

6)      If Plaintiff prevails on his Colorado Wage Act claim, statutory penalties are appropriate.

IT IS FURTHER **ORDERED** that the Motion [#37] is **DENIED IN PART** as to:

1.  The amount of overtime due to Plaintiff for the period October of 2019 through February of 2020 or for other time periods that Plaintiff worked;

2.  Whether Plaintiff was paid for his final weeks of work in June of 2021; and

3.  What amount of pay, if any, is owed to Plaintiff for his work in June 2021.

Dated:  September 16, 2022

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

-27-